Filed 11/20/23  In re J.G. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>G.M.,<br><br>        Defendant and Appellant. | D082301<br><br>(Super. Ct. No. JJP0000878) |

APPEAL from an order of the Superior Court of Imperial County, Marco D. Nunez, Judge.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Kelly Ranasinghe, Deputy County Counsel, for Plaintiff and Respondent.

G.M. (Mother)[1] appeals from both the March 2023 juvenile court order denying her Welfare and Institutions Code[2] section 388 petition and the May 2023 order terminating her parental rights under section 366.26. She claims the denial of her modification petition was an abuse of discretion, and, further, had the court not abused its discretion, it could not have terminated her parental rights.[3]

FACTUAL AND PROCEDURAL BACKGROUND

On November 27, 2020 the Imperial County Department of Social Services (Department) placed newborn J.G. into protective custody after a toxicology screening produced a positive result for methamphetamine and amphetamine. Mother admitted to using methamphetamines the day before delivering J.G. She admitted that she began using the illicit substances prior to finding out she was pregnant and did not stop upon learning of her pregnancy. Department filed a petition under section 300, subd. (b) in December 2020, the juvenile court found Department made a prima facie case and ordered J.G. detained. The court sustained the petition at the jurisdiction hearing. At the disposition hearing in March 2021, the court declared J.G. a dependent, ordered him removed from parental custody, and ordered reunification services for Mother. J.G. spent approximately the first

_____

[1]    Father is not a party to this appeal.

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

[3]    Mother's notice of appeal was from the judgment terminating her parental rights, but her opening brief discussed only the denial of her 388 petition. We grant Mother's request and construe her notice of appeal of the order terminating her parental rights as a challenge to the court's order denying her section 388 petition for modification.

2

two and a half years of his life away from Mother before the court terminated her parental rights.

*A. Mother's Substance Use History*

J.G. was removed from Mother's care as a result of her inability to adequately supervise or protect him due to Mother's substance use. Therefore, discussion of Mother's substance use history is necessary to resolve this matter.

Mother acknowledged "a drug abuse problem" and the "need for intervention services" and "substance use disorder counseling." After J.G. was removed from her care, she was a "no show" to a December 24, 2020 drug test; Mother also missed her intake appointment for the Imperial County Substance Use Disorder Program. At the dispositional hearing in March 2021, four months into her separation from J.G., the court found Mother had made no progress towards mitigating the causes necessitating placement— her drug addiction. Mother admitted herself to a local hospital for assistance with withdrawal symptoms in June 2021; however, Mother again tested positive in July 2021 while six months pregnant with J.G.'s sibling. At the six-month review hearing, the court concluded Mother had made only minimal progress towards the causes mitigating placement.

Mother began a three-month inpatient rehabilitation program on August 9, 2021 but left on August 13, 2021. Mother tested negative for drugs when J.G.'s sibling was born and during a random urinalysis in October 2021. Then, Mother missed two drug screening requests on sequential days in January 2022. By the 12-month review hearing, the court found Mother to be progressing in mitigating the causes necessitating placement. However, Mother tested positive for methamphetamines and amphetamines on a subsequent drug test taken on January 25, 2022. She again tested positive

3

on February 4, 2022. The three minor children that resided with Mother also tested positive for methamphetamine and amphetamine; J.G. tested negative. Mother did not enroll into an inpatient rehabilitation program, and again missed a requested drug test in May 2022.

Mother reported enrolling in an inpatient rehabilitation program in June 2022. Staff at the program indicated she walked out of the office during the intake process. On June 23, 2022, Mother submitted to a urinalysis and hair strand drug test; the urinalysis test returned negative but the hair strand test returned positive. At the 18-month review hearing on July 18, 2022, Mother admitted to her recent positive drug test and understood that the drug test was "sufficient to be unsuccessful to challenge the Department's report." The court concluded Mother's progress in mitigating the causes necessitating placement was minimal, ordered reunification services terminated, and set a section 366.26 hearing to terminate Mother's parental rights for November 2, 2022. After termination of her reunification services on July 18, 2022, Mother and the prospective adoptive parent "agreed to keep in communication monthly in regards to [J.G.]."

*B. Mother's Contact with J.G.*

Mother's contact with J.G. was sporadic. Between separation and May 2021, Mother completed one video visit with J.G. In June, 2021, Mother began video visits with J.G. and progressed to in-person visits. In November 2021, J.G. began visiting Mother for unsupervised visits in her home.

Following Mother's January 2022 relapse, however, unsupervised visitation was suspended. J.G.'s siblings were also removed from Mother's

4

care in February 2022.[4]  In subsequent supervised visits, where J.G.'s siblings were also present, Mother did not display the same bond with J.G. that she had with the siblings.  Mother did not greet or hug J.G. and left J.G. to play on his own.  Visitation was "shown to be determinantal to [J.G.]" when he became ill after putting parts of a mop in his mouth while unattended and after social services assistants discovered J.G. playing with pointy objects and choking hazards.  Mother expressed that J.G. did not "familiarize, remember, or know her."  In contrast, J.G. was "thriving in placement, [and] bonding well with caregiver provider and family."  J.G. has never lived in Mother's custody, and "has a strong attachment" to the caregiver provider who now seeks to adopt J.G. Mother conceded there was "not a close bond between [Mother] and [Child]."

*C. Case History Following the Termination of Reunification Services*

The court called the section 366.26 hearing on December 5, 2022 and continued it after Mother stated her intention to file a section 388 petition and indicated that there might be "4 possible fathers."  Mother later filed a section 388 petition seeking J.G.'s return to her custody.  The court continued the section 366.26 hearing to April 5, 2023 and set the section 388 petition hearing for January 1, 2023.  The section 388 hearing was continued to February 8, 2023, then March 1, 2023 and again to March 2, 2023.

In support of her section 388 petition, Mother cited her completion of 60 days of residential treatment, and lodged three certificates of completion for various parenting courses.  She participated in Alcoholics Anonymous, where she felt more comfortable than Narcotics Anonymous.  She received

---

[4]    Mother requests we take judicial notice of the dependency records regarding her other children.  Her request for judicial notice is denied.  The documents were before the juvenile court; however, the status of her other dependency cases are not relevant to the issue on appeal.

residential treatment for most of October and November 2022, and reported her last date of use to be September 20, 2022. In advance of the hearing, Mother tested negative for drugs on January 25, 2023. She asserts she "turned her life around." When she filed her petition, Mother had been sober approximately three months and, at the time of her hearing, was sober for between five and six months.

The Department opposed Mother's section 388 petition. Both the Department and the Court Appointed Special Advocate (CASA) recommended J.G. remain as placed.

The court denied Mother's section 388 petition and declined to make findings "indicating circumstances have changed." The court praised Mother's "great strides in her road to recovery" but was not blind to her "backsliding." Because Mother relapsed two months after reunification services as to J.G. were terminated, the court could conclude only that "she's in the process of change." The court found that the bond between Mother and J.G. was "not strong" and terminated Mother's parental rights at the section 366.26 hearing in May 2023.

## DISCUSSION

Mother contends the court abused its discretion when it denied her section 388 petition. She complains the court found only that her circumstances were "changing" while she believed them "changed." We disagree. As detailed below, the court had substantial evidence to conclude that, while Mother's circumstances were changing at the time of the section 388 hearing, they had not substantially *changed*.

After termination of reunification services, " ' the focus shifts to the needs of the child for permanency and stability. ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) "[T]here is a rebuttable presumption that continued

6

foster care is in the best interest of the child." (*Ibid*.)  A parent must establish by a preponderance of the evidence *both* a change in circumstances *and* the promotion of the child's best interests.  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)  Not every change in circumstance can justify modification of a prior order.  (*In re S.R.* (2009) 173 Cal.App.4th 864, 870.)

Indeed, "[i]t is rare that the denial of a section 388 motion merits reversal as an abuse of discretion."  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 522 (*Kimberly F.*).)  Reversal may be appropriate when the reason for removal is "not as serious as other, more typical reasons for dependency jurisdiction, such as sexual abuse, physical abuse, or illegal drug use" and the removal of that reason constitutes a "genuine change of circumstances." (*Ibid*.)

The instant case falls squarely within the category of more serious reasons for removal enumerated in *Kimberly F.*  As observed by the court "[t]he reasons leading to removal were serious.  [Mother] was using methamphetamine on an almost daily basis and the children were testing positive."  Demonstrating a genuine change in circumstances was not a matter of making a home tidy, it was a matter of overcoming chemical dependency with a history of backsliding.  Mother testified that she believed she could stop using methamphetamines on her own and notes that she was able to "on a few occasions."  The longest of these occasions was a period between August 2021 and January 2022, after which Mother relapsed.

Mother's sobriety immediately prior to the section 388 hearing does not constitute a substantial or genuine change in circumstances.  She agreed that she was "fairly young in [her] recovery" and that she continued to experience triggers surrounding "situations of desperation, people, [and] places."  While her efforts are commendable, Mother had previously been sober for a similar

7

period of time only to return to drug use. She matched her longest previous period of sobriety prior to the hearing in part due to the court's multiple continuations.

Concluding there was no substantial change in circumstances at the time of the section 388 hearing, we need not delve deeply into whether returning to Mother was in J.G.'s best interest. Nevertheless, we note the strong bond J.G. had with his caregiver and that Mother herself did not want to remove J.G. from his placement because it was "the only place and family [J.G.] knows."

At the subsequent section 366.26 hearing, held on May 3, 2023, Mother stipulated to the Department's report and offered nothing further in argument or evidence. The hearing was not set as a contested hearing and Mother, through her attorney, submitted on the issue of section 366.26 without discussing or preserving any exceptions to adoption. The court adopted Department's recommendations and terminated Mother's parental rights.

DISPOSITION

The orders denying the section 388 petition and terminating Mother's parental rights are affirmed.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


CASTILLO, J.